**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-21837-CIV-ALTONAGA/Goodman**

**DONNA ALVAREZ**,

     Plaintiff,

v.

**LOANCARE LLC**,

     Defendant.

_____ /

**<u>ORDER</u>**

**THIS CAUSE** came before the Court on Plaintiff, Donna Alvarez's Motion for Class Certification [ECF No. 67], filed on October 21, 2020. Prior to the Motion's filing, Proposed Intervenor, Jonathan Wayne Owoc suggested the Court lacked subject matter jurisdiction. (*See* Mot. to Intervene [ECF No. 43] 1).[1] The Court has considered the Motion for Class Certification; Defendant, LoanCare LLC's Response [ECF No. 70] and Notices of Supplemental Authority [ECF Nos. 80, 81, 84]; Plaintiff's Reply [ECF No. 77]; the memoranda of law addressing Owoc's jurisdictional challenge [ECF Nos. 45, 46]; the record; and applicable law. As further explained, the Court has subject matter jurisdiction, but the motion for class certification is denied.

**I.      BACKGROUND**

**Plaintiff's Claims**

     Plaintiff brought this putative class action challenging the collection of processing fees for making mortgage payments by phone or online, as practiced by Defendant, a mortgage sub-

---

[1] The Court denied without prejudice the Proposed Intervenor's Motion to Intervene and Stay, to be reinstated if the Court determined she had subject matter jurisdiction. (*See* Sept. 21, 2020 Order [ECF No. 44] 1). Given the Court is denying class certification, it is unnecessary to reinstate the Motion to Intervene.

servicer. (*See generally* Compl. [ECF No. 1]). Previously, the Court partially granted a Motion to Dismiss (*see* Mot. Dismiss [ECF No. 7]), narrowing Plaintiff's claims to two: violations of the Florida Consumer Collection Practices Act, section 559.55 *et seq.*, Florida Statutes ("FCCPA") (Count I); and violations of the Florida Deceptive and Unfair Trade Practices Act, section 501.201 *et seq.*, Florida Statutes ("FDUTPA") (Count II). *See Alvarez v. LoanCare LLC*, No. 20-21837-Civ, 2020 WL 5514410, at *6 (S.D. Fla. Aug. 28, 2020).

      ***The FCCPA Claim***. At a hearing (*see* [ECF No. 30]) held to address the Motion to Dismiss, Plaintiff clarified she is only bringing a claim in Count I under the second clause of section 559.72(9), Florida Statutes, which states: "In collecting consumer debts, no person shall . . . assert the existence of some [] legal right when such person knows that the right does not exist." *Id.* (alterations added); *see also Alvarez*, 2020 WL 5514410, at *2. Plaintiff alleges Defendant had no legal right to collect the processing fees because the fees were not expressly authorized by the mortgages serviced by Defendant, Defendant knew it had no such right, and Defendant thereby violated the FCCPA by collecting the processing fees — an implicit assertion of the right to collect those fees. (*See* Compl. ¶¶ 37–38); *see also Alvarez*, 2020 WL 5514410, at *3.

      ***The FDUTPA Claim***. In Count II, Plaintiff alleges Defendant "violated the FDUTPA by engaging in the unfair and deceptive practices as described [in the Complaint.]" (Compl. ¶ 45 (alteration added)). Plaintiff asserts two theories of FDUTPA liability in Count II. *See Alvarez*, 2020 WL 5514410, at *5–6. First, Plaintiff alleges Defendant violated the FDUTPA by "secretly retaining money from every 'processing fee' Defendant charges consumers" instead of passing the entire fee to a third-party payment processor. (Compl. ¶ 49; *see also* ¶¶ 14–16, 18, 46). Second, Plaintiff contends Defendant's violation of the FCCPA as alleged in Count I — knowingly asserting a non-existent right — also constitutes a *per se* violation of the FDUTPA. *See Alvarez*,

2020 WL 5514410, at *5–6.

**Factual Record for Class Certification**

Defendant is a Virginia limited liability company with a principal place of business in Virginia Beach, Virginia. (*See* Def.'s Mem. of Law, Decl. of Peter O'Bryant ("O'Bryant Intervene Decl.") [ECF No. 46-1] ¶ 3).[2] Defendant is a mortgage sub-servicer, performing loan servicing for a master servicer under a sub-servicer agreement. (*See* Decl. of Peter O'Bryant ("O'Bryant Decl.") [ECF No. 71] ¶ 3).

Mortgage servicing involves receiving a borrower's mortgage payments and crediting the borrower's accounts as required by the mortgage. *See* 12 U.S.C. § 2605(i)(3). Defendant services loans "originated by potentially thousands of mortgage entities." (O'Bryant Decl. ¶ 31). Loans are routinely transferred between lenders and master servicers, with different sub-servicers involved along the way. (*See id.* ¶ 36). The serviced loans vary in type, including Fannie Mae, Freddie Mac, Ginnie Mae, Federal Housing Administration, Veterans Administration, Department of Agriculture, and conventional. (*See id.* ¶ 32). Loan terms vary based on riders, addenda, forbearance agreements, loan modifications, and express or implied amendments. (*See id.* ¶ 31). A mortgage's terms may dictate when and how a borrower must make payments. (*See id.* ¶ 9).

***Processing Fees for Optional Payment Services.*** In addition to the payment methods required by the mortgage and several other free payment methods, Defendant offers borrowers optional avenues to make their payments — crediting such payments as conforming to the mortgage's terms. (*See id.* ¶¶ 13–14). As relevant here, those optional methods are paying by phone with an agent, paying by phone using an automated system, and paying online (the "Optional Payment Services"). (*See id.* ¶ 8).

---

[2] Peter O'Bryant is Defendant's Senior Vice of President of Customer Experience. (*See* O'Bryant Decl. ¶ 2).

CASE NO. 20-21837-CIV-ALTONAGA/Goodman

Defendant charged processing fees for the Optional Payment Services, ranging between $10 and $15, depending on the service. (*See id.* ¶¶ 12, 38). The fees were charges for Defendant's services and not pass-through charges for third-party payment processing. (*See id.* ¶ 12). Defendant disclosed the fees to borrowers, requiring the borrowers' assent to the fees in exchange for Defendant's Optional Payment Services. (*See id.* ¶¶ 13–15).

Defendant charged the processing fees subject to a review of applicable laws, regulations, and the mortgage servicing agreements, waiving fees when necessary. (*See* Mot., Ex. C, Tr. of Dep. of Peter O'Bryant ("O'Bryant Dep.") [ECF No. 67-3] 27:4–12; 77:15–19; 79:21–80:2).[3] Defendant waived the fees if, upon receiving a loan for servicing, the loan had been delinquent for 30 or more days. (*See* O'Bryant Decl. ¶ 24). Defendant is generally unaware of mortgages expressly authorizing *or* prohibiting the charging of the processing fees. (*See* O'Bryant Dep. 61:9–17). Defendant, however, did not review the terms of *every* mortgage to determine the permissibility of charging the fees. (*See id.* 60:21–25).

On October 1, 2020, Defendant stopped charging Optional Payment Service fees. (*See* O'Bryant Decl. ¶ 30).

***The McWhorter Settlement***. At least one class action settlement amended or modified approximately 182,832 loans to expressly permit the types of fees at issue here. *See McWhorter v. Ocwen Loan Servicing, LLC*, No. 15-cv-01831, 2019 WL 9171207, at *3 (N.D. Ala. Aug. 1, 2019). The *McWhorter* plaintiffs sued Ocwen Loan Servicing, a mortgage servicer, for charging fees for making payments by phone or online — without those fees being expressly authorized by the mortgages. *See id.* at *1–2. The parties settled without reaching the merits. *See id.* at *3. The settlement provided that the involved mortgages and promissory notes "shall be deemed amended

---

[3] The Court references deposition transcripts by the transcript's page and line numbers.

. . . to expressly authorize the assessment of Convenience Fees for future payments made by optional methods that the loan's servicer or noteholder is not otherwise required to offer or accept under the promissory note and mortgage[.]" *McWhorter*, Am. Stipulation of Settlement & Release, ¶ 8.6 [ECF No. 54-1] (N.D. Ala. Aug. 9, 2018) (alterations added).

Defendant is the current sub-servicer of thousands of loans previously serviced by Ocwen and potentially modified by the *McWhorter* settlement.  (*See* O'Bryant Decl. ¶ 36).  Determining the exact number of affected loans would require identifying all loans previously serviced by Ocwen during the relevant time period, gathering information from Ocwen regarding its charging of fees to each borrower, and then analyzing each individual former Ocwen loan and the corresponding fee transactions to determine whether the borrower met the *McWhorter* class definition.  (*See id.*).

***Processing Fees for Florida-Involved Loans***.  Between May 1, 2015 and August 4, 2020, Defendant charged processing fees for Optional Payment Services in transactions arising from approximately 74,153 different loans involving likely Florida residents.[4]  (*See* Mot., Ex. D, Def.'s Resps. to Pl.'s 1st Set of Interrogs. ("Def's Interrogs. Resps.") [ECF No. 67-4] 3).[5]  From 2017 through August 4, 2020, Defendant collected approximately $5.5 million in revenue from these Florida-involved processing fees.  (*See id.* 6).  An unknown number of these Florida-involved loans were previously serviced by Ocwen and thus are potentially modified by the *McWhorter* settlement.  (*See* O'Bryant Decl. ¶ 36).  Defendant does not maintain information enabling the determination of a borrower's purpose for taking out a loan.  (*See id.* ¶ 32).

---

[4] The 74,153 figure for Florida residents subject to the processing fees is an approximation, based on mortgages with both Florida property *and* mailing addresses.  (*See* Def's Interrogs. Resps. 3).

[5] The Court relies on the header pagination generated by the CM/ECF system for all exhibits, unless otherwise specified.

*Proposed Intervenor's Estimate of Processing Fees in Florida*.  Owoc filed a putative class action against Defendant a year before Plaintiff initiated the present action; Defendant subsequently removed Owoc's action to this District.  (*See generally Owoc v. LoanCare LLC*, No. 20-cv-21837, Notice of Removal [ECF No. 1] (S.D. Fla. May 17, 2020)).  While based on similar facts, *Owoc* involves only a breach-of-contract claim — different from the statutory causes of action alleged here.[6]  (*Compare* Mot. to Intervene, Ex. A., Decl. of James L. Kauffman[7] ("Kauffman Decl.") [ECF No. 43-1], Ex. 1, Class Action Compl. ([ECF No. 43-1] 9–51) ¶¶ 53–59, *with* Compl. ¶¶ 31–49).  Based on the discovery produced in the *Owoc* action, Owoc estimates the total amount of class-wide processing fees in *his* action to be $5.8 million for the period from April 30, 2014 to February 11, 2020.  (*See* Kauffman Decl. ¶ 8).

*Plaintiff's Mortgage*.  Plaintiff is a Florida citizen and resident, owning a Florida home subject to a mortgage.  (*See* Mot., Ex. E, Decl. of Donna Alvarez ("Pl.'s Decl.") [ECF No. 67-3] ¶¶ 2–3).  Plaintiff obtained the mortgage to purchase the home as a primary residence.  (*See* Mot., Ex. G, Pl.'s Resps. to Def.'s 1st Set of Interrogs. ("Pl.'s Interrogs. Resps.") [ECF No. 67-7] 7).  Plaintiff's mortgage provides:

1. **Payment of Principal, Interest, Escrow Items, and Late Charges.** . . . .

    Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender[.] . . .

13. **Loan Charges.**  Lender may charge Borrower fees for services performed in connection with the Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security instrument, including, but not limited to, attorney's fees, property inspection and valuation fees.  Lender may collect fees and charges authorized by the Secretary [of the U.S. Department of

---

[6] The Court dismissed Plaintiff's breach-of-contract and unjust enrichment claims.  *See Alvarez*, 2020 WL 5514410, at *6.

[7] James L. Kauffman is counsel for Owoc.

Housing and Urban Development or his designee].  Lender may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law.

. . . .

**15.   Governing Law; Severability; Rules of Construction.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract.

(Compl., Ex. A, Mortgage ("Pl.'s Mortgage") [ECF No. 1-1] ¶¶ 13–15 (emphasis in original; alterations added)).

The note — secured by the mortgage — requires Plaintiff to mail payments to a specific address "or at a different place if required by the Note Holder."  (Resp., Ex. 17 ("Note") [ECF No. 72-17] § 3(A)).  The mortgage also provides that "'**Applicable Law'**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." (Pl.'s Mortgage 3 (emphasis in original)).

*Defendant's Subservicing of Plaintiff's Mortgage*.  Defendant began subservicing Plaintiff's mortgage on September 1, 2016.  (*See* O'Bryant Decl. ¶ 25).  The mortgage was not in default when Defendant began subservicing it.  (*See id.*).  Defendant sent a notice — received by Plaintiff — instructing Plaintiff to mail her loan payments to a specific address.  (*See* Resp., Ex. 26, Tr. of Video Dep. of Donna Alvarez ("Pl.'s Dep.") [ECF No. 72-26] 107:25–109:6).  The notice also disclosed to Plaintiff several other payment options, including both free payment methods and the fee-based Optional Payment Services.  (*See id.* 109:23–110:24).

Plaintiff chose to make her loan payments using Defendant's Optional Payment Services 16 times.  (*See* Pl.'s Decl. ¶ 4).  Prior to Plaintiff electing to use the Optional Payment Services,

Defendant — over the phone or online — again disclosed to Plaintiff the Services' fees.  (*See* Pl.'s Dep. 111:4–13).  Plaintiff agreed to pay the fees in exchange for Defendant's Optional Payment Services.  (*See id.* 156:18–22, 196:1–9, 210:9–13).  In total, Defendant charged Plaintiff less than $200 in fees.  (*See* Pl.'s Decl. ¶ 4).

 Defendant has since refunded all fees paid by Plaintiff, plus interest, and has "modified its procedures for Plaintiff's loan such that she would not be charged for making payments online or over-the-phone[.]"  (O'Bryant Decl. ¶ 29 (alteration added)).

***Plaintiff as Putative Class Representative***.  Plaintiff brings this action because she thinks Defendant had no right to charge her, or anyone else, the Optional Payment Service fees.  (*See* Pl.'s Dep. 67:9–68:10, 167:3–7; Pl.'s Decl. ¶ 9).  Plaintiff understands she is a potential representative for classes of borrowers who have paid fees for Defendant's Optional Payment Services.  (*See* Pl.'s Dep. 61:2–5, 178:25–179:6; Pl.'s Decl. ¶¶ 5, 8–9).  Plaintiff is prepared to serve as class representative, has personally contributed her time and effort to the litigation when necessary, and states she has no conflict of interest with the proposed classes' members.  (*See* Pl.'s Decl. ¶¶ 5–8).

Plaintiff's counsel has experience prosecuting class actions, including consumer protection class actions like the present one.  (*See generally* Mot., Ex. H, The Moskowitz Firm Resume ("Firm Resume") [ECF No. 67-8]).

## II.    DISCUSSION

Plaintiff's present Motion seeks to certify two classes under Federal Rule of Civil Procedure 23.  (*See generally* Mot.)  Defendant responds by challenging the Court's subject matter jurisdiction and opposing certification.  (*See generally* Resp.).  Also, before the Court is Owoc's suggestion that the Court lacks subject matter jurisdiction.  (*See* Mot. to Intervene 14–17).  The Court first addresses whether subject matter jurisdiction over the putative class action exists before

CASE NO. 20-21837-CIV-ALTONAGA/Goodman

turning to the question of class certification.

**A.      The Court's Subject Matter Jurisdiction**

Owoc asserts the Court lacks jurisdiction under the Class Action Fairness Act of 2005 ("CAFA").   (*See* Mot. to Intervene 14–17).   Defendant separately contends the Court lacks jurisdiction because Plaintiff does not have Article III standing.   (*See* Resp. 7–8).[8]   The Court considers each argument.

### *1.      Subject Matter Jurisdiction Legal Standard*

Subject matter jurisdiction must be established before a case can proceed on the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–95 (1998).   This is because "[f]ederal courts are courts of limited jurisdiction."   *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994) (alteration added).   It is presumed that a federal court lacks jurisdiction in a case until the plaintiff demonstrates the court has jurisdiction over the subject matter.   *See id.* (citing *Turner v. Bank of N. Am.*, 4 U.S. 8, 11 (1799); *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 182–83 (1936)).   "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case . . . ."   *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) (alterations added; citations omitted).

A defendant may challenge subject matter jurisdiction facially or factually.   *See Douglas v. United States*, 814 F.3d 1268, 1274–75 (11th Cir. 2016).   A facial attack requires that the court examine the complaint, taken as true, to determine whether the plaintiff has sufficiently alleged a jurisdictional basis.   *See id.* at 1274.   Conversely, a factual attack requires that the court examine matters outside the pleadings, such as testimony and affidavits, determining whether the plaintiff

---

[8] The Court refers to Defendant's Response using the document's footer pagination.

CASE NO. 20-21837-CIV-ALTONAGA/Goodman

has sufficiently alleged a basis for the court's jurisdiction. *See id*. at 1278. Unlike a facial attack, in a factual attack the plaintiff's claims are not taken as true. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). Furthermore, a factual challenge places the burden of proving jurisdiction on the plaintiff. *See Motta ex rel. A.M. v. United States*, 717 F.3d 840, 844 (11th Cir. 2013).

> **2.      *The Court Presently Has Subject Matter Jurisdiction Under the CAFA*.**

The CAFA provides federal district courts with jurisdiction over class actions that satisfy the following requirements at the time such lawsuits are filed: (1) the total amount in controversy, aggregating the claims of the individual class members, exceeds $5,000,000, exclusive of interests and costs; (2) any member of the putative class is a citizen of a state different from any defendant; and (3) there are at least 100 putative class members. *See* 28 U.S.C. §§ 1332(d)(2), (5); *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1194 (11th Cir. 2007).

Plaintiff alleges jurisdiction under the CAFA: (1) more than $5,000,000, exclusive of interests and costs, are in controversy (*see* Compl. ¶ 9); (2) a member of each putative class is a citizen of a different state than Defendant (*see id.*); and (3) there are at least 100 putative class members in each class (*see id.* ¶ 22). Owoc nevertheless contends there are not, in fact, more than $5 million in controversy; and even if there are, "local controversy" and "home-state controversy" statutory exceptions divest the Court of jurisdiction. (*See* Mot. to Intervene 1, 14 (citing 28 U.S.C. §§ 1332(d)(4)(A)–(B)); other citations omitted)). The Court considers each argument.

> **a.      Amount in Controversy**

As mentioned, Plaintiff alleges the CAFA's requisite jurisdictional amount of over $5 million. (*See* Compl. ¶ 9). Owoc brings a factual challenge to the Court's jurisdiction, suggesting there is an insufficient amount in controversy. (*See* Mot. to Intervene 15). Owoc claims "it is *likely* that the improper fees collected by [Defendant] here total less than $4 million." (*Id.*

(emphasis and alteration added)).  Based on discovery from his independent putative class action against Defendant, Owoc asserts: (i) the processing fees at issue in his case total approximately $5.8 million; (ii) this amount results from a longer time period than exists in the present case, because Owoc filed his action a year earlier and the statute of limitations periods are identical for both actions; and (iii) because the present action is only a temporal subset of the fees at issue in *Owoc*, the amount in controversy here must be less than $5.8 million.  (*See id.* & n.6 (citing Kauffman Decl. ¶¶ 8–9)).  By applying logic and math to the data and time periods involved, Owoc approximates the actual amount in controversy in the present action is less than $4 million.  (*See id.* 15).

 "Generally, 'it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.'"  *Federated Mut. Ins. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (alteration adopted; quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).  A party seeking to invoke the court's jurisdiction "is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it."  *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010).

The parties contest Owoc's conclusions regarding the amount in controversy.  Specifically, Plaintiff provides a Defendant-produced chart identifying the annual revenue Defendant collected in Florida-involved processing fees from May 1, 2015 to August 4, 2020.  (*See* Def's Interrogs. Resps. 6).  The chart indicates Defendant collected $5,522,997.38 in allegedly improper processing fees between January 1, 2017 and August 4, 2020 — just shy of the four-year period relevant for Plaintiff's farthest-reaching claim under the FDUTPA.  (*See id.* 5–6; *see also* Fla. Stat. § 95.11(3)(f) (four-year statute of limitations for statutory actions)).

Given the contrary evidence produced by Defendant, it does not appear to a legal certainty

CASE NO. 20-21837-CIV-ALTONAGA/Goodman

that the amount in controversy falls short of the CAFA's jurisdictional requirement of over $5 million.  Dismissal on this basis is thus not justified.  *See Red Cab Co.*, 303 U.S. at 389.

### b.      The "Local Controversy" and "Home State" Exceptions

Owoc next argues that two statutory exceptions apply, requiring the Court to decline jurisdiction over this action: the local controversy exception under 28 U.S.C. section 1332(d)(4)(A) and the home state exception under section 1332(d)(4)(B).  (*See* Mot. to Intervene 14 (citing *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 570 (5th Cir. 2011); other citations omitted)).  Both exceptions have a similar requirement that can only be satisfied if a defendant shares a state of citizenship with two-thirds of the proposed plaintiff classes, and the action was originally filed in that same state.[9]  Owoc insists these requirements are met here, because Defendant is a limited liability company, and one of its members — via a series of entities — is a Florida citizen; the vast majority of members of the proposed Plaintiff classes are Florida citizens; and the action was filed in Florida.  (*See* Mot. to Intervene 14–17).  The parties do not dispute the first two statements; but whether Defendant is a citizen of Florida for CAFA jurisdictional purposes is a bit more complicated.

Parties seeking to invoke statutory exceptions to jurisdiction "bear the burden of showing that at least one of the exceptions does apply."  *Hunter v. City of Montgomery*, 859 F.3d 1329, 1335 (11th Cir. 2017).  The exceptions Owoc invokes are contained in the CAFA, which states "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."  28 U.S.C. § 1332(d)(10).

---

[9] *Compare* 28 U.S.C. § 1332(d)(4)(A)(i) (applying exception where "greater than two-thirds of the members of the proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed [and] at least 1 defendant is a defendant[] who is a citizen of the State in which the action was originally filed" (alterations added)), *with id.* § 1332(d)(4)(B) (applying exception where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed").

12

The determinative issue is whether Defendant — a limited liability company — is an "unincorporated association" as the term is used in the CAFA; if so, Defendant is a citizen of Virginia, not Florida, and the CAFA exceptions at issue do not apply. (*See* O'Bryant Intervene Decl. ¶ 3 (declaring Defendant a limited liability company organized under the laws of, and with a principal place of business in, Virginia)). Owoc argues, for purposes of evaluating subject matter jurisdiction, that the Court should rely on the rule that is traditionally applied to determine an unincorporated entity's citizenship in a civil action. (*See* Mot. to Intervene 15–16). Typically, in a civil action invoking a federal court's diversity jurisdiction, a limited liability company is deemed a citizen of every state of which its members are citizens. *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004). Both Plaintiff and Defendant, in contrast, insist the "traditional" rule does not apply to class actions. (*See* Pl.'s Mem. of Law [ECF No. 45] 2–5); Def.'s Mem. of Law [ECF No. 46] 4–6).

Before Congress enacted the CAFA, the Eleventh Circuit held, for purposes of determining citizenship in a diversity jurisdiction analysis, a limited liability company is subject to the traditional rule for "unincorporated entities . . . in the absence of Congress's extending the treatment given to corporations." *Rolling Greens MHP, L.P.*, 374 F.3d at 1022 (alteration added; citations omitted; *see also id.* at 1021 n.1 ("Rather than taking the citizenship of their members, corporations are citizens in the states of their incorporation and their principal place of business." (citing 28 U.S.C. § 1332(c)(1))). Under *Rolling Greens MHP, L.P.*, a limited liability company is considered a citizen of every state of which its members are citizens. *See id.* at 1022.

In 2005, however, Congress enacted the CAFA, including a provision specifying that "[f]or purposes of this subsection . . . an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."

CASE NO. 20-21837-CIV-ALTONAGA/Goodman

28 U.S.C. § 1332(d)(10) (alterations added).  Congress therefore extended the treatment given to corporations to "unincorporated associations" — at least in the class action context.  *See Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 703–04 (4th Cir. 2010) ("[I]n enacting [section] 1332(d)(10) as a part of [the] CAFA in 2005, Congress . . . modifi[ed] the rule for business entities other than corporations[.]" (alterations added; citing 28 U.S.C. § 1332(d)(10))).  After the CAFA was enacted, the Eleventh Circuit acknowledged "Section 1332(d)(10) sets forth how the citizenship of unincorporated associations is treated for purposes of [the] CAFA's jurisdictional and removal provisions[.]"  *Lowery*, 484 F.3d at 1200 n.40 (alterations added).

In short, limited liability companies are treated as unincorporated associations for jurisdictional purposes.  *See Rolling Greens, MHP, L.P.*, 374 F.3d at 1021–22 (discussing limited liability companies and how Congress "is capable of adjusting the rules of diversity jurisdiction to account for *unincorporated associations*" (emphasis added)).  And for the *CAFA*'s jurisdictional purposes, an unincorporated association is a citizen of the state in which it is organized and the state of its principal place of business.  *See* 28 U.S.C. § 1332(d)(10).

Defendant is a limited liability company organized in Virginia, with a principal place of business in Virginia; under the CAFA, it is thus deemed a citizen of Virginia, *not* Florida.[10] Because both of the statutory exceptions to CAFA jurisdiction invoked by Owoc depend on Defendant being a Florida citizen, Owoc fails to show the exceptions apply.  *See Hunter*, 859 F.3d at 1335; *see also* 28 U.S.C. § 1332(d)(4)(A)(i) (exception can only apply if class action filed in a

---

[10] Owoc supports his argument that the traditional "citizenship of every member" rule for limited liability companies should apply here by relying on three district court decisions applying the traditional diversity rule for CAFA jurisdictional determinations.  (*See* Mot. to Intervene 16 (citing *Ringsmuth v. Repp Sports LLC*, No. 2:19cv752, 2019 WL 5423355, at *1 (M.D. Fla. Oct. 23, 2019); *McAteer v. DCH Reg'l Med. Ctr.*, No. 2:17-cv-00859, 2018 WL 1089873 (N.D. Ala. Feb. 26, 2018); *Kaczor v. Klaumwell Research Labs., LLC*, No. SACV 13-0713, 2013 WL 12143038 (C.D. Cal. June 6, 2013))).  The Court is unpersuaded by these authorities, as they do not discuss 28 U.S.C. section 1332(d)(10) and the CAFA's jurisdictional rule for unincorporated associations.

CASE NO. 20-21837-CIV-ALTONAGA/Goodman

state of defendant's citizenship); *id.* § 1332(d)(4)(B) (same)).

The Court has jurisdiction over the present action under the CAFA.

**3.        *Plaintiff Has Article III Standing*.**

Defendant contends Plaintiff lacks standing because her claims were rendered moot by Defendant's unconditional refunding of the contested fees and ceasing the charging of fees for Optional Payment Services.  (*See* Resp. 7–8).  Plaintiff disagrees, pointing out she is seeking injunctive relief to prevent Defendant's resumption of the allegedly unlawful practice of charging fees — and Defendant has not demonstrated that such conduct will not occur in the future.  (*See* Reply 7–8).[11]  The Court agrees with Plaintiff.

Article III of the Constitution limits federal court subject matter jurisdiction to only "Cases" and "Controversies."  U.S. Const. Art. III § 2.  A plaintiff showing an injury traceable to the defendant's conduct and redressable by a favorable court decision presents such a case or controversy and has standing to sue.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Injuries no longer remediable by the court generally render a case moot and deprive a plaintiff of standing.  *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992).

Under the voluntary cessation doctrine, "a party choosing to end conduct alleged to be illegal does not necessarily deprive the tribunal of the power to hear and determine the case." *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 531 (11th Cir. 2013).  "Since the defendant is 'free to return to his old ways,' he bears a 'heavy burden' of demonstrating that his cessation of the challenged conduct renders the controversy moot."  *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1265 (11th Cir. 2010) (first quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953); then quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

---

[11] The Court refers to Plaintiff's Reply using the document's footer pagination.

Although Defendant claims to have ceased charging fees for its Optional Payment Services, Defendant has made no showing that it will not "return to [its] old ways[.]" *Id.* at 1265 (alterations added; quotation marks and citation omitted)). Defendant thus has not met its burden to demonstrate this action is moot. *See, e.g.*, *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 699 (S.D. Fla. 2014) (finding an action was not moot because the defendant did not show it would not resume the disputed conduct, despite declaring it had no intention of doing so).

The action is thus not moot, and Plaintiff has Article III standing.

## B.      Whether Class Certification is Appropriate

Plaintiff moves to certify two classes under Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3):

> **FCCPA CLASS:** All persons who are borrowers or co-borrowers on a residential mortgage loan owned or serviced by LoanCare on property located in Florida who, since May 1, 2018, LoanCare charged, collected, or attempted to collect a processing fee for making a mortgage payment over the phone or online.

> **FDUTPA CLASS:** All persons who are borrowers or co-borrowers on a residential mortgage loan owned or serviced by LoanCare on property located in Florida who, since May 1, 2016, LoanCare charged, collected, or attempted to collect a processing fee for making a mortgage payment over the phone or online.

(Mot. 4–5[12] (emphasis in original)). Plaintiff further proposes excluding from the classes "LoanCare and its officers, directors, affiliates, legal representatives, and employees, any governmental entities, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff." (*Id.* at 5). Finally, Plaintiff requests she be appointed as the classes' representative and The Moskowitz Law Firm PLLC ("Plaintiff Counsel") as class counsel. (*See id.* 20).

The Court now turns to the question of whether certifying these classes is appropriate.

---

[12] The Court refers to Plaintiff's Motion using the document's footer pagination.

### 1.      *Class Certification Legal Standard*

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotation marks and citation omitted). "The district court has broad discretion in determining whether to certify a class." *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992) (citation omitted). "[W]ith [this] great power comes great responsibility; the awesome power of a district court must be 'exercised within the framework of [Federal Rule of Civil Procedure] 23.'" *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir. 2004) (alterations added; citation omitted; *abrogated in part on other grounds by Bridge* v. *Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)).

"For a class to be certified, the named plaintiff must have standing and the putative class must satisfy both the requirements of Federal Rule of Civil Procedure 23(a) and the requirements found in one of the subsections of Rule 23(b)." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1267 (11th Cir. 2019) (footnote call numbers and citation omitted). This is not a "mere pleading standard[;]" meeting Rule 23's requirements must be proven *in fact* with evidence. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (alteration added; internal quotation marks and citation omitted). "The burden of proof to establish the propriety of class certification rests with the advocate of the class." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003) (citations and footnote call number omitted).

In examining whether the party seeking certification has satisfied the requirements of Rule 23, the Eleventh Circuit has counseled that "while a court should not determine the merits of a claim at the class certification stage, it is appropriate to 'consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied.'" *Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1337 (11th Cir. 2006) (citations omitted).

However, "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).  Indeed, "[g]oing beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996) (alteration added; citation omitted).

As discussed, Plaintiff has standing.  (*See supra* Section II.A.3).  Before "coming to rest on the certification question," *Falcon*, 457 U.S. at 160, it is helpful to clarify what the classes' members would need to prove to prevail in the action — were the classes to be certified.   The Court will then consider the Motion in the context of the two overarching prongs of Rule 23: (a) and (b).

> ### 2.      *Framing the Key Element of Plaintiff's Claims*
>
> ***Whether Defendant Had a Legal Right to Collect Processing Fees***.  Both the FCCPA claim (Count I) and FDUTPA claim (under Plaintiff's *per se* violation theory) (Count II) rely on showing Defendant had no legal right to collect processing fees under the FCCPA, section 559.72(9), Florida Statutes; Defendant knew it had no such right; and Defendant unlawfully asserted such a right, causing damage.[13]  Plaintiff's one-dimensional theory for the first key element is simple: her mortgage did not *expressly authorize* Defendant to charge processing fees for the Optional Payment Services, and this *absence of express authority* establishes Defendant had no legal right to collect the disputed fees.[14]  Such a theory was plausible at the

---

[13] Under the FCCPA, a person is liable for actual damages for violating any provision of section 557.72, Florida Statutes.  *See* Fla. Stat. § 559.77(2).  And section 559.72(9) makes it unlawful for any person, in collecting consumer debts, to "assert the existence of some [] legal right when such a person knows that the right does not exist."  *Id.* (alteration added).

[14] (*See* Mot. 2 ("There is no dispute by anyone that 'telephone' or 'website' processing fees are NOT

motion-to-dismiss stage, when all inferences are drawn in favor of Plaintiff. *See Alvarez*, 2020 WL 5514410, at *3. The Motion to Dismiss is past; the Court now considers the merits of Plaintiff's claims in "mak[ing] a determination of the certification issues." *Castano*, 84 F.3d at 744 (alteration added).

With the benefit of the evidence provided by the parties on the issue of class certification, it is clear the processing-fee issue is not as simple as Plaintiff portrays. The mere absence of express authority to charge fees does not mean fees are prohibited. *See, e.g.*, *Alexander v. Carrington Mortg. Servs., LLC*, No. CV 20-2369, 2020 WL 7319252, at *5 (D. Md. Dec. 11, 2020) ("[The [p]laintiffs' argument that their Deeds of Trust did not expressly grant [the defendant] the right to collect such a fee does not mean such a fee is prohibited." (alterations added)). Certainly, the mortgage only precludes fees if *expressly prohibited* by law or the mortgage. (*See* Pl.'s Mortgage ¶ 13). The Court could locate no such express prohibition relevant to the fees at issue.

Plaintiff, moreover, does not point to any Florida law or mortgage term *requiring* express

---

expressly authorized in any of these mortgages." (emphasis in original)); *id.* 4 ("Despite knowing full well that 'processing fees' are not expressly authorized by standard-form mortgages or permitted by law, [Defendant] charges [its] customers extra 'processing fees' for making mortgage payments over the phone or online. . . . [T]hese 'processing fees' not expressly authorized by the mortgage agreement . . . ." (alterations added)); *id.* 5 ("[T]here is no express authority in the law or in the mortgage contracts for the processing fees it charges[.]" (citations and emphasis omitted)); *id.* 9 ("[T]he fees were not expressly authorized by the Mortgage or by law." (citation omitted)); *id.* 13 ("[T]he processing fees at issue . . . were not expressly authorized by law or by the mortgages[.]" (alterations added)); *id.* 17 ("[Defendant]'s liability as to all class members is based on whether [Defendant] is expressly authorized to charge the processing fees." (alterations added)); *see also* Reply 2 ("[Defendant] does not dispute [] that it knew it was never expressly authorized — by any mortgage or any law — to charge processing fees[.]" (alterations added; emphasis omitted)); *id.* 3 (defining as a common and predominate issue "whether the fees violate the FCCPA and FDUTPA as they are neither expressly authorized by the uniform mortgages, nor permitted by law" (emphasis omitted)); *id.* ("[Defendant] uniformly charged Plaintiff and class members fees for paying their mortgages online or over the phone, although it knew neither the mortgages nor the law expressly authorize [sic] them[.]" (alteration added; citation omitted)); *id.* 5 ("[Defendant] admitted that there is no express authorization anywhere for these fees[.]" (alterations added; emphasis omitted)); *id.* 5–6 ("Plaintiff need only show that the fees are neither expressly authorized by the mortgages . . . nor permitted by state statutory law[.]" (alterations added; emphasis omitted)); *id.* 9 ("[Defendant] never disclosed that it knew the processing fees were neither expressly authorized by any mortgages nor permitted by law[.]" (alterations added; emphasis omitted))).

authorization in her mortgage contract — prior to a mortgage servicer charging fully-disclosed and agreed-to processing fees for optional payment methods voluntarily used by borrowers. This failure was explained in a recent decision in this District, addressing an identical claim:

> [The plaintiff] presents no Florida law that [the defendant] ran afoul of by charging the fee. Rather, [the plaintiff] merely alleges that [the defendant] was not *expressly authorized* to charge such a fee under Florida law or the Mortgage. . . . However, [the plaintiff] conflates the relevant inquiry in the [Fair Debt Collection Practices Act] analysis with the relevant inquiry here. *The FDCPA prohibits threatened collection of debts not expressly authorized* by the relevant debt contract or permitted by state law. *The FCCPA contains no such prohibition.*

*Cooper v. Pennymac Loan Servs., LLC*, No. 20-cv-21546, 2020 U.S. Dist. LEXIS 243190, at *14 (S.D. Fla. Dec. 23, 2020) (first emphasis in original; other emphases and alterations added; first citing 15 U.S.C. § 1692f(1); then citing Fla. Stat. § 559.72(9); last citation omitted).

Significantly, Plaintiff's mortgage contemplates a borrower either amending the agreement or entering into separate agreements — such as for the charging of fees for making payments by methods not included in the mortgage itself. (*See* Pl.'s Mortgage ¶ 15). And Plaintiff apparently did just that when she elected to use Defendant's Optional Payment Services.[15] Without an overarching legal or contractual prohibition of the disputed fees, whether Defendant had a legal right to collect Optional Payment Service processing fees would thus depend on whether Defendant had valid agreements with the classes' members — providing Optional Payment Services in exchange for the right to charge and collect the disclosed processing fees. This is the central issue of Plaintiff's entire case; and it is through this lens that the Court views the Motion.

***Plaintiff's Traditional FDUTPA Claim***. The Court previously permitted Plaintiff to

---

[15] (*See* Pl.'s Dep. 156:18–22 ("[Defendant's Counsel]: And so in order to get the convenient services, you agreed to pay and they delivered the service, correct? . . . . [Plaintiff]: They took my payment, yes." (alterations added)); *id.* 196:1–9 ("[Defendant's Counsel]: [D]id you agree to pay the fee in exchange for that service? . . . . [Plaintiff]: Correct." (alterations added)); *id.* 210:9–13 ([Defendant's Counsel]: In order to have [Defendant] provide the service because it was convenient to you, you agreed? . . . . [Plaintiff]: Correct." (alterations added))).

proceed with a "traditional" FDUTPA claim premised on Defendant's allegedly deceptive conduct in charging processing fees well in excess of what Defendant pays third parties for payment processing — and retaining the difference as a secret profit center. *See Alvarez*, 2020 WL 5514410, at *5. Plaintiff now acknowledges "[t]here are no third parties involved in facilitating mortgage payments online or over the phone." (Mot. 8 (alteration added; citing O'Bryant Dep. 27:13–17)). In its Response, Defendant points out that Plaintiff's allegations relating to third-party payment processors is contradicted by the facts. (*See* Resp. 3). Plaintiff does not address this in her Reply. The Court thus treats this factually unsupported theory of liability as having been abandoned.

The Court now considers whether certification of the proposed classes is appropriate under the framework of Rule 23.

### 3.      *Rule 23(a)*

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal–Mart*, 564 U.S. at 349. Under Rule 23(a), the party seeking class certification has the burden of showing:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "These four prerequisites of Rule 23(a) are commonly referred to as 'numerosity, commonality, typicality, and adequacy of representation, and they are designed to limit class claims to those fairly encompassed by the named plaintiffs' individual claims.'" *Valley Drug*, 350 F.3d at 1188 (citation omitted).

CASE NO. 20-21837-CIV-ALTONAGA/Goodman

###### a.      Numerosity

As stated, a plaintiff must establish the class is so numerous that joinder of all members is impracticable.  *See* Fed. R. Civ. P. 23(a)(1).  As a general rule, a group of more than 40 satisfies the numerosity requirement of Rule 23, a group of fewer than 21 does not, and the numbers in between are subject to judgment based on additional factors.  *See Vega*, 564 F.3d at 1266–67. Showing the precise number of members is unnecessary.  *See Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983).  Essentially, a plaintiff seeking to certify a class need only make a showing with factual support that numerosity is satisfied.  *See Vega*, 564 F.3d at 1266–67.

Defendant charged the contested fees on over 74,000 unique loans involving Florida properties.  (*See* Def's Interrogs. Resps. 3).  While the Court agrees with Defendant that this "raw data . . . does not establish the class" (Resp. 28 (alteration added)), such precision is not required for class certification.  Plaintiff satisfies numerosity.

###### b.      Commonality

Commonality requires a plaintiff to show "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  But merely reciting generalized questions is insufficient; a plaintiff must demonstrate that class members have suffered the same injury based upon a common contention "of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart*, 564 U.S. at 350.  "What matters to class certification is not the raising of common 'questions' — even in droves — but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive resolution of the litigation."  *Id.* (emphasis in original; alteration adopted; internal quotation marks and citation omitted).

Plaintiff presents four "example" common issues she contends are capable of classwide

resolution:

> (a) whether [Defendant]'s practice of charging a "processing fee," which is not authorized by contract or any provision of existing law, violates the FCCPA; (b) whether [Defendant]'s  practice of charging a "processing fee," which is not authorized by contract or any provision of existing law, violates the FDUTPA; (c) whether Plaintiff and class members have sustained monetary loss and the proper measure of that loss; and (d) whether Plaintiff and class members are entitled to other appropriate remedies, including injunctive relief.

(Mot. 12–13 (alterations added)).

Merely reciting these four generalized questions does not satisfy Plaintiff's burden to demonstrate commonality.  *See Wal-Mart*, 564 U.S. at 349 ("Is that an unlawful . . . practice?  What remedies should we get?   Reciting these questions is not sufficient to obtain class certification." (alteration added)).   Moreover, Plaintiff's central "common" allegation — that Defendant's charging of processing fees for the Optional Payment Services is unlawful without express authorization to charge such fees — is, apparently, unsupported by Florida law or the terms of Plaintiff's mortgage.  (*See supra* Section II.B.2).  This common contention *may* have glued together the classes' members.  In its absence, commonality dissipates, resulting in each individual class member needing to separately prove Defendant knowingly charged him or her processing fees without a valid agreement to do so.  Plaintiff thus does not meet her burden of showing commonality.

### c.   Typicality

"A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3).  Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Vega*, 564 F.3d at 1275 (alteration adopted; internal quotation marks and citation omitted).  "A sufficient nexus is established if the claims or defenses of the class and the class representative

arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).   Identical claims or defenses are not required, however; and "[a] factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class." *Id.* (alteration added; citations omitted).

Plaintiff argues typicality is satisfied because her claims arise from Defendant's practice of charging processing fees for Optional Payment Services. (*See* Mot. 13).  According to Plaintiff, she, "like every class member, was impermissibly charged these processing fees[.]" (*Id.* (alteration added)).   Plaintiff provides evidence demonstrating Defendant charged her and the proposed classes' members the same processing fees for the same Optional Payment Services. (*See* Def.'s Interrogs. Resps. 3, 6).

Defendant contends Plaintiff presents evidentiary challenges and defenses applicable only to her, rendering Plaintiff atypical.  (*See* Resp. 8–13).  But Defendant does not show how these issues make Plaintiff "markedly diff[erent] from . . . other members of the class." *Kornberg*, 741 F.2d at 1337 (alterations added).  The Court thus agrees with Plaintiff — she is sufficiently typical of the classes and satisfies Rule 23(a)(3).

### d.   Adequacy of Representation

The final element of the Rule 23(a) inquiry is adequacy.  The "adequacy of representation analysis encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co.*, 350 F.3d at 1189 (internal quotation marks and citation omitted).  Plaintiff states she is prepared to serve as a class representative, having already devoted significant time and effort to the litigation.  (*See* Pl.'s Decl. ¶¶ 5–8).  She states she has no conflict

24

of interest with the putative classes' members.  (*See id.* ¶ 8).  Plaintiff's counsel has extensive experience with class action litigation of similar scope as the present action.  (*See generally* Firm Resume).  Plaintiff thus appears to show she and her counsel are adequate.

Defendant nevertheless objects, arguing Plaintiff performed insufficient due diligence in selecting her counsel and — relying on minor inconsistencies in Plaintiff's statements or her occasional inability to make timely mortgage payments — lacks the "personal characteristics and integrity necessary to fulfill the fiduciary role of class representative."  (Resp. 13–14 (quoting *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1254 (11th Cir. 2003) (internal quotation marks omitted; other citation omitted))).

The Court is unpersuaded.  First, the extent of Plaintiff's due diligence in selecting counsel sheds little light on whether she and counsel will adequately prosecute the action.  Second, the Court fails to see any connection between the issues raised by Defendant and whether Plaintiff has a conflict with the classes or her ability to prosecute the action.  Plaintiff need not be ideal; adequacy is all that is required.  Plaintiff satisfies Rule 23(a)(4)'s adequacy requirement.

### 4.    *Rule 23(b)*

In addition to establishing the elements of Rule 23(a), the classes must also satisfy one of the three additional requirements of Rule 23(b).  Plaintiff asserts the classes are appropriate under Rules 23(b)(2) and 23(b)(3).  (*See* Mot. 15–17).

### a.    **Certification under Rule 23(b)(2)**

Rule 23(b)(2) provides that certification is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2) class treatment is appropriate where the "predominant relief sought is injunctive or declaratory."  *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001) (citations

omitted).  Rule 23(b)(2), however, "does not extend to cases in which the appropriate final relief

relates exclusively or predominantly to money damages." *Agan v. Katzman & Korr, P.A.*, 222

F.R.D. 692, 701 (S.D. Fla. 2004) (internal quotation marks and citation omitted).

Where "a plaintiff seeks damages in addition to equitable relief, injunctive class

certification is only appropriate if the money damages are incidental to the requested injunctive or

declaratory relief." *DWFII Corp. v. State Farm Mut. Auto. Ins. Co.*, 271 F.R.D. 676, 686

(S.D. Fla. 2010) (internal quotation marks and citations omitted); *see also Murray*, 244 F.3d at 812

("Monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive

or declaratory relief." (alterations adopted; internal quotation marks and citation omitted)).  Money

damages are incidental only when class members would be automatically entitled to them once

class-wide litigation is established.  *See Murray*, 244 F.3d at 812; *see also Swanson v. Mid Am,

Inc.*, 186 F.R.D. 665, 669 (M.D. Fla. 1999) ("Incidental means that the monetary damages flow

directly from liability to the class as a whole on the claims forming the basis of the injunctive or

the declaratory relief." (internal quotation marks and citation omitted)).

Plaintiff seeks both damages and equitable relief but altogether fails to address whether the

sought-after money damages are incidental to the requested injunctive relief — even after

Defendant raised the issue in its Response.  (*Compare* Mot. 17–18, *and* Reply 15, *with* Resp. 29–

30).  The Court thus declines to certify the proposed classes under Rule 23(b)(2).  *See, e.g.*,

*Randolph*, 303 F.R.D. at 700 (declining to certify class under Rule 23(b)(2) because the plaintiff

"made *no effort* to demonstrate that the money damages, which appear to be the primary remedy

sought, are merely incidental to the injunctive relief" (emphasis in original)).

   **b.**  **Certification under Rule 23(b)(3)**

Rule 23(b)(3) requires that (i) questions of law or fact common to the members of the class

predominate over any questions affecting only individual members; and (ii) a class action be superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3).  The Court considers each of these prerequisites.

### i.    Predominance

Predominance "is perhaps the central and overriding prerequisite for a Rule 23(b)(3) class." *Vega*, 564 F.3d at 1278 (citation omitted).  "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Klay*, 382 F.3d at 1255 (alterations adopted; internal quotation marks and citation omitted).  "Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." *Id.* (citation omitted).  "The predominance inquiry requires an examination of the claims, defenses, relevant facts, and applicable substantive law, to assess the degree to which resolution of the classwide issues will further each individual class member's claim against the defendant." *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x 782, 789 (11th Cir. 2014) (alteration adopted; internal quotation marks and citations omitted).  "Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1234 (11th Cir. 2000) (citations omitted).

Plaintiff does not, and cannot, demonstrate predominance exists in the action.  Stripping away legal standards and string cites, Plaintiff devotes only three sentences to addressing predominance — posing the same sorts of generalized questions the Court determined were

insufficient to demonstrate commonality.  (*See* Mot. 15–17).  The Court agrees with Defendant that "[s]tring citing other cases that certified an FCCPA or FDCPA claim does not carry Plaintiff's burden" on a motion for class certification.  (Resp. 15 (alteration added; citation omitted)).  Plaintiff fails to address claim elements, identify which elements are susceptible to classwide proof, or explain how resolving classwide issues will "establish most or all of the elements of the individual claims[.]"  *Klay*, 382 F.3d at 1255 (alteration added).

    In any event, individual issues predominate.  The linchpin of Plaintiff's claims is that Defendant's right to charge processing fees does not exist.  As stated, there is no Florida law or contract term prohibiting such fees.  (*See supra* Section II.B.2).  The record shows, moreover, that Defendant entered into separate agreements with Plaintiff (and presumably putative class members) for the provision of Defendant's Optional Payment Services in exchange for Defendant's right to charge processing fees.  (*See supra* note 15).  To prevail on their individual claims — proving such a right to charge fees did not exist — the classes' members would need to show these agreements to be somehow invalid.  This would require, *inter alia*, individualized inquiries into each mortgage's terms[16] (including whether the mortgage was modified by the *McWhorter* settlement, expressly permitting the fees at issue here) and the circumstances of the making of each particular processing fee agreement, whether by phone or online.  Not only would this inquiry be necessary for each individual putative class member, it would be necessary for *each individual processing fee* charged to each class member.  Class certification is not appropriate.

---

[16] In her Reply, Plaintiff argues without evidence that individualized inquiries into each mortgage's terms is unnecessary because "the uniformity of Class members' mortgage documents is evident from the nature of the mortgage industry, which uses uniform documents created, prepared or approved by Fannie Mae and Freddie Mac, and which most residential mortgages utilize."  (Reply 5 (citing *Wilborn v. Bank One Corp.*, 906 N.E. 2d 396, 403 (Ohio 2009))).  Plaintiff cannot meet her evidentiary burden on a motion for class certification by merely citing legal authority; she does not demonstrate that her mortgage is sufficiently similar to the classes' members' mortgages so as to render individualized inquiries into their terms unnecessary.

ii.       **Superiority**

Rule 23(b) requires that a class action be "superior to other available methods for fairly

and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3). The factors relevant to this

analysis include:

> (A) the class members' interests in individually controlling the prosecution or
> defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun
> by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in
> the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id.*  The Rule 23(b)(3) "predominance analysis has a tremendous impact on the superiority analysis

. . . . [T]he less common the issues, the less desirable a class action will be as a vehicle for resolving

them."  *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159,

1184 (11th Cir. 2010) (alterations added; internal quotation marks and citations omitted).

Plaintiff argues a class action is superior here because of the purportedly predominant

common issues and the enormous expense associated with litigating the claims individually, which

may prohibit individual suits.  (Resp. 17).  The Court disagrees.  As stated, Plaintiff has not shown

class-wide issues predominate in this action; this weighs against a class action being superior to

other methods of efficiently adjudicating the claims.  *See, e.g.*, *Sliwa v. Bright House Networks,*

*LLC*, 333 F.R.D. 255, 281 (M.D. Fla. 2019) (finding a class action not superior because

predominance was not shown).  Moreover, the FCCPA and FDUTPA are fee shifting statutes,

making individual actions viable alternatives to a class action.  *See* Fla. Stat. § 559.77(2); *id.* §

501.2105(1); *see also Gaisser v. Portfolio Recovery Assocs., LLC.*, No. 08-60177-Civ, 2009 WL

10666810, at *9 (S.D. Fla. Mar. 2, 2009) (determining a class action was not superior in part

CASE NO. 20-21837-CIV-ALTONAGA/Goodman

because fee shifting statute provided individuals meaningful opportunity to litigate their claims).

###### 5.        *Plaintiff's Cited Class Actions*

Plaintiff relies on several other similar class actions to support her argument that certification is warranted here.[17]  The cited authorities are unhelpful.  The Court explains.

**Sanders v. LoanCare, LLC**.  In *Sanders*, the plaintiffs brought mortgage processing fee claims under California's Rosenthal Fair Debt Collection Practices Act (*see Sanders*, Mar. 24, 2020 Order, at *2), which — like the federal FDCPA — prohibits charging processing fees on *defaulted* debts unless they are expressly authorized by the agreement creating the debt.  *See* 85 Cal. Att'y Gen. Op. No. 02-601, at *4 (Oct. 29, 2002) ("[T]he Act [only] applies to debts that have become delinquent." (alteration added)).[18]  The court certified the class, which was limited to those affected borrowers whose mortgages were past due at the time the processing fees were charged.  *See Sanders v. LoanCare, LLC*, No. CV 18-9376, 2020 U.S. Dist. LEXIS 230545, at *5 (C.D. Cal. Dec. 4, 2020) (clarifying the class was certified for settlement purposes).  The *Sanders* plaintiffs showed an adequately common basis for their claims — the disputed fees on *defaulted debts*, without express authorization, may have been unlawful under California law.  *See id.* at *7– 8.

Plaintiff, conversely, seeks to certify two classes using allegations like those in *Sanders* but without the "defaulted debt" qualifier, while simultaneously maintaining that "express

---

[17] (*See* Mot. 1 n.1 (citing *Sanders v. LoanCare, LLC*, No. CV 18-09376, Order Granting Pl.'s Mot. for Class Cert. [ECF No. 88] (C.D. Cal. Mar. 24, 2020)); *id.* 2 n.2, 3, 16–17 (citing *McWhorter*, Order Conditionally Certifying Class [ECF No. 59] (N.D. Ala. Feb. 6, 2019)); *id.* 2 n.5 (citing *Cibula v. Seterus, Inc.*, No. 50-2015-ca-010910, Order Granting Class Cert. (Fla. 15th Cir. Ct. Mar. 27, 2019); *Garcia v. Nationstar Mortg. LLC*, No. 15-cv-01808, Order Granting Pl.'s Mot. for Prelim. Approval of Class Action Settlement, Certifying Class for Settlement Purposes [ECF No. 99] (W.D. Wa. May 25, 2018); *id.* 16 (citing *Cibula*); *see also* Reply 2–5, 9–10, 13 (citing *Cibula*, *McWhorter*, and *Sanders*)).

[18] Available at https://oag.ca.gov/system/files/opinions/pdfs/02-601.pdf.

authorization" is somehow still required for processing fees to be permitted. As stated, this contention lacks merit and differentiates Plaintiff's present Motion from *Sanders*, rendering the latter inapposite here.

**McWhorter v. Ocwen Loan Servicing, LLC**. *McWhorter* is similar to *Sanders*, except the *McWhorter* plaintiffs brought claims under the FDCPA. (*See McWhorter*, at *8–9). Also similar to *Sanders*, the *McWhorter* certified class was limited to those borrowers whose mortgages were in default after being acquired for servicing by the defendant (*see id.* at *10) — because only defaulted mortgages trigger the protections of the FDCPA.[19] Thus, for the same reasons *Sanders* is unhelpful to Plaintiff, so too is *McWhorter*.

**Garcia v. Nationstar Mortgage LLC**. *Garcia* is similar to *McWhorter* and fails to persuade for the same reasons. *See generally Garcia*, Complaint [ECF No. 1] (W.D. Wa. Nov. 17, 2015) (alleging claims under the FDCPA for the defendant's charging of fees on *defaulted* loans).

**Cibula v. Seterus, Inc.** Like Plaintiff, the *Cibula* plaintiffs brought claims under the FCCPA and FDUTPA. The plaintiffs alleged their Fannie Mae uniform mortgages expressly prohibited the charging of credit card processing fees, making the charging of such fees contrary to the mortgage terms. *See Cibula*, Am. Compl. ¶¶ 2, 23, 28–30 (Fla. 15th Cir. Ct. Mar. 4, 2016); *see also id.* ¶ 29 ("Fannie Mae's servicing guidelines, which [the defendant] must follow when sub-servicing Fannie Mae loans, do not allow the collection of any fees on routine payments[.]" (alterations added)). Moreover, the plaintiffs alleged they were *given no option* but to pay the fees to make their payments. *See id.* ¶ 26.

The court certified the proposed class, which is similar to the class definitions in the present Motion. *See Cibula*, Mar. 27, 2019 Order, at *2. The court, however, did not discuss the

---

[19] *See* 15 U.S.C. § 1692b(6)(F) (excluding from the FDCPA's definition of "debt collector" persons collecting debts that were not in default at the time the person obtained the debt).

CASE NO. 20-21837-CIV-ALTONAGA/Goodman

evidentiary support — if any — for the conclusion that the mortgages of the entire class were subject to the same Fannie Mae guidelines or were otherwise so uniform as to preclude individualized inquiries into each mortgage. *See id.* at \*12 ("Ultimately the fact that the contract is uniform as to the class indicates that certification is appropriate." (citation omitted)). Moreover, the *Cibula* plaintiffs specifically indicated why charging a credit card processing fee was not permitted under the mortgage's terms — something Plaintiff has failed to do in this action. Finally, the record evidence produced for class certification here demonstrates Plaintiff and the putative classes' members gave their assent to the processing fees in exchange for the Optional Payment Services, a factual wrinkle absent from *Cibula*, whose plaintiffs claimed they were given no option but to pay the disputed fees. The Court is thus unpersuaded that *Cibula* lends any meaningful support to Plaintiff's Motion.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff fails to satisfy the commonality requirement of Federal Rule of Civil Procedure 23(a)(3) and does not show certification is appropriate under either Rule 23(b)(2) or (b)(3).

Accordingly, it is **ORDERED** and **ADJUDGED** that Plaintiff, Donna Alvarez's Motion for Class Certification **[ECF No. 67]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 19th day of January, 2021.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

32